[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is a contract action wherein the plaintiff seeks payment for goods which it manufactured for the defendant. It was originally brought in four counts. However, counts 1 and 4 have been withdrawn. This decision therefore concerns counts 2 and 3 only. The defendant has filed a counterclaim to count 2. Count 2 CT Page 2756
In August of 1989 the plaintiff, Northeast Precision Products, Inc. ("Northeast") and the defendant, Complex Machine Tool Co., Inc. ("Complex") entered into an agreement, wherein Northeast would manufacture for Complex eight sub-plates and thirty-two blocks for the price of $6,792.00. (Plaintiff's Exhibits A B). These items were to be manufactured for, and in accordance with specifications supplied by CNC Systems, a customer of Complex. After the agreement was reached, Complex for warded to Northeast the material from which the blocks and sub plates were to be made, together with a purchase order (Plaintiff's Exhibit A), and the specifications supplied by CNC Systems. (Defendant's Exhibit 6).
After the items had been manufactured, it was deter mined by Complex that a good many of them were not manufactured in accordance with the specifications. All of the sub-plates were defective and 16 of the 32 blocks were defective. (Plaintiff's Exhibit A. Defective were sub-plates 1409-7, sub-plates 1409-9, and blocks 1409-13).
Sixteen of the blocks were not defective (Plaintiff's Exhibit A #1409-11), and the defendant has been billed $800.00 for them (Plaintiff's Exhibit B). $200.00 has been paid leaving the amount of $600.00 still due and owing. The defective blocks (Exhibit A #1409-13) were returned to Northeast by Complex.
Complex tried to modify the defective sub-plates in the hope that its customer, CNC, would accept them, and spent $1,298.00 in labor time trying to fix them. However, they were all rejected by CNC, and Complex lost $8,800.00 in business from CNC as a result. The defendant's counterclaim seeks reimbursement for its losses.
The court finds the damages proved by the defendant on count 2 to be $3,506.00, calculated as follows:
 1. Loss of business from CNC as a result of rejection of defective sub-plates $ 8,800.00
 2. Labor costs incurred in effort to fix defective sub-plates 1,298.00 $10,098.00 LESS
 1. Contract price for defective items as follows: a) defective sub-plates $3,800.00 b) defective blocks 2,192.00 CT Page 2757
 2. Contract amount owed for non-defective blocks $800 (less $200.00 paid) 600.00 $ 6,592.00 Damages to Defendant $ 3,506.00
Count 3
Also in August of 1989 Northeast and Complex entered into an agreement, wherein Northeast would manufacture a chuck body for Complex for $3,800.00. Complex was to supply the material for the chuck and Northeast was to make the chuck complete to a blueprint specification. After coming to an agreement, Complex forwarded to Northeast a purchase order setting forth the terms of the agreement, (Defendant's Exhibit 1), the material from which the chuck was to be made, the specifications (Defendant's Exhibit 2), and a set of drawings.
After the chuck had been manufactured Mr. DiBacco, president of Complex, was told it was ready to be picked up, but that he would have to pay Northeast $1,000.00 before he could remove it from the Northeast plant. When he went to pick up the chuck, he was unable to inspect it because there were no facilities to do so. Northeast was in the process of moving its plant, all the machines were being shutdown, and there was no power. However, Mr. DiBacco paid $1,000.00 to Northeast and took the chuck to Complex's facility.
Upon receipt of the chuck Complex inspected it and found it to be defective. Mr. DiBacco informed Northeast's president (Mr. Godek) of the defect within five days of receipt of the chuck, and he also stopped payment on the $1,000.00 check. Two weeks after Complex received the chuck Mr. Godek came to Complex to inspect it. Mr. DiBacco showed him the defect in the chuck and explained that it would be necessary to remanufacture the chuck almost completely. Mr. Godek has admitted that the chuck was defective.
In order to correct the defect, Complex found it necessary to put in extra hours at the shop. In addition, it was necessary to have grinding done on the chuck. The grinding would not have been necessary if there had not been the defect.
The following expenses were incurred by Complex in order to correct the defect.
 Reworking the jaw slots $973.50 Six mounting holes 97.35 Reworking two additional components 778.80 Remanufacture of center plate 259.60 CT Page 2758 Grinding (Defendant's Exhibit 4) 800.00
$2,909.25
The contract price was $3,800.00, of which $500.00 has been paid (Defendant's Exhibit 5). Therefore, the court finds that the defendant owes the plaintiff $390.75.
In summation, the court finds that on count 2 (on the complaint and counterclaim) the defendant is entitled to dam ages in the amount of $3,506.00. On count 3 the plaintiff is entitled to damages in the amount of $390.75.
Accordingly, judgment may enter for the defendant against the plaintiff in the amount of $3,115.25. No costs to either party.
FRANCES ALLEN SENIOR JUDGE.
RE: STATE v. WILLIAM WATLINGTON DOCKET NUMBER CR4-151746 COUNTY WATERBURY
DECISION WAS FILED AND SENT TO THE FOLLOWING ON MARCH 6, 1991
* ( ) CHIEF JUSTICE * (x) SUPERIOR COURT CLERK * ( ) CIRCUIT COURT CLERK * (x) PARTICIPATING JUDGE: LAWRENCE C. KLACZAK, JUDGE RAYMOND R. NORKO, JUDGE JUDGE DAVID M. BARRY, JUDGE (Substitute) *(x) SENTENCING JUDGE JOHN M. BYRNE, JUDGE *(x) DEFENDANT (x) DEFENDANT'S COUNSEL ALAN D. McWHIRTER *(x) WARDEN, STATE PRISON *(x) WARDEN, CONNECTICUT REFORMATORY *( ) WARDEN, CONNECTICUT STATE FARM FOR WOMAN ( ) JOHN D. LABELLE, ESQ., STATE'S ATTORNEY (x) STATE'S ATTORNEY (County Involved in the Opinion) ( ) CAPTAIN GEORGE FAGAN (State Police Department) *(x) EMILY J. LEBOVITZ (Reporter of Judicial Divisions) ( ) (MISS) KATHRYN MILLER (Judicial Department) ( ) HOWARD T. WALKER (Connecticut State Library) ( ) HARTFORD TIMES (Only if approved to Publish) ( ) HARTFORD COURANT (Only if approved to Publish) (x) SENTENCE REVIEW DIVISION FILE CT Page 2759
STATE OF CONNECTICUT v. WILLIAM WATLINGTON
 Date of Sentence — July 14, 1989 Date of Application — July 14, 1989 Date Application Filed — July 14, 1989 Date of Decision — February 28, 1991
Application for review of sentence imposed by the Superior Court, Judicial District of Waterbury, Docket No. CR4-151746.
 Alan D. McWhirter, Esq., Defense Counsel, for Petitioner John A. Connelly, Esq., State's Attorney, for the State
BY THE DIVISION
The petitioner, age 36 at the time of sentencing, was convicted by a jury of one count each of the crimes of murder and assault in the first degree. He received sentences of 60 years and 20 years, respectively, to run concurrently for a total effective sentence of 60 years. The petitioner apparently had no prior record of criminal convictions.
Evidence presented at trial indicated that in the early morning hours of April 17, 1988, the petitioner had a confrontation with the victim Beamon at the petitioner's home. Beamon was the brother of the petitioner's wife. The petitioner I left the scene and returned later with a gun with which he shot both his wife and Beamon, seriously wounding the former and fatally wounding the latter. At trial, and again at the hearing on this petition, the petitioner claimed that Beamon was reintroducing drugs into his home and that he felt that he had to protect his family which included two children in addition to his wife.
At sentencing, the state's attorney recommended that the court impose the maximum total effective sentence of 80 years for this "intentional, premeditated murder." The trial court noted that the petitioner "decided that he was going to get rid of a person who he thought was a problem to him."
The sentence imposed is neither inappropriate or disproportionate considering the nature of the crimes and the public's need for protection from the petitioner. Sentence Affirmed.
BARRY, J. KLACZAK, J. NORKO, J.
Barry, J., Klaczak, J., and Norko, J., participated in this CT Page 2760 decision.